## GATLIN–McDONALD CHEVROLET CO., Inc., v. PUCKETT et al.

### No. 5354.

Court of Appeal of Louisiana. Second Circuit.

March 1, 1937.

Truett L. Scarborough, of Ruston, for appellants.

W. T. Holloway, of Jonesboro, for appellee.

TALIAFERRO, Judge.

Defendant's 1934 model Chevrolet truck was seriously damaged from collision on or about July 1, 1935. He was protected by insurance with the Phoenix Insurance Company of Hartford, Conn., the policy containing a $50 deductible provision. The insurer's adjuster sought and secured from several car repair garages the price of material and workmanship necessary to restore the truck to its condition prior to being injured. Plaintiff's offer was accepted. It amounted to $201.60. It submitted a detailed list of the injured or destroyed parts of the truck, cost thereof, and the value of the labor necessary to complete the repair job. Defendant assented to the adjuster's handling of the matter and to his closing the contract with plaintiff. The truck was hauled by it from Ruston to Jonesboro, where the work was to be performed. On account of delay in procuring some parts needed to replace like ones destroyed or made useless by the collision, plaintiff had not completed its contract by August 12th. On this date defendant, being badly in need of the truck for the purposes of his business of delivering candy, called at plaintiff's garage in Jonesboro and, after some discussion between him and plaintiff's representative, the truck was delivered to defendant with the understanding that it would soon be returned for completion of repairs. Defendant was informed that some minor repairs had not been done on account of inability at that time to procure the parts needful to do so. He then gave plaintiff his check on a Ruston bank for $46.50 to cover his liability on the repair bill, less $3.50 due him by plaintiff. Payment of this check was stopped by defendant and he thereafter (August 22d) had two garages in Monroe, La., make and submit to him propositions to supply the parts and labor deemed necessary by them to restore the truck to good condition. He declined to take the car back to plaintiff for additional repairs.

Plaintiff's representative went to Ruston to see defendant for the purpose of inducing him to allow it to finish work on the truck. There is difference between these parties as to the understanding, if any, reached. However, on September 3d, defendant wrote plaintiff that he was unwilling to surrender the truck for additional repairs unless its manager, Mr. Gatlin, would come to Ruston and sign an agreement that the work would be immediately done and the truck delivered back to him the following Sunday evening, September

8th. He stated in this letter that he would deliver the ·truck for the repairs on September 6th, if ·plaintiff's manager would come up and sign the agreement on that date. It is clear from the contents of this letter that he wished this guarantee from Mr. Gatlin to insure him against excessive delay in completing the work on the truck. He thought his business would suffer and loss would be sustained by him if this occurred. On September 4th, plaintiff wrote the following letter to defendant:

"We have your letter of September 4th stating that you do not intend to return your truck to us to be finished as per our agreement when we delivered the truck .to you also another agreement with our Mr. Collins a few days ago that 'you would bring the truck in to our place Friday September 6th for the balance of repair that we agreed or contracted to do unless our Mr. Gatlin came to see you by Friday morning September 6th at 10 o'clock and signed a statement that we would have the truck completed and returned to you by Sunday afternoon September 8th.

"It is impossible for our Mr. Gatlin to meet you in Ruston Friday morning but we are reserving full time of our body department for Friday Saturday and Sunday to take care of your job as per our agreement and shall expect the truck early. Friday morning September 6th, 1935, and will have your job ready for your inspection Sunday afternoon September 8th 1935.

"We will thank you to get the truck to us as early as possible Friday morning so we may have all time possible on it."

A copy of this letter was mailed to the adjuster, with a postscript as follows:

"We would like for you to have a representative to be at our place Sunday with the insurance check so we can get Mr. Puckett to sign it as we want all parties satisfied when the truck goes out again."

In a letter by plaintiff to defendant, September 25th, after referring to recent correspondence between them, it is said:

"Now, Mr. Puckett, we are going to ask you to either bring your truck in to our shop within ten days so we may finish the repairs that we left unfinished when we let you have the car to use while the balance of parts were coming in or else pay the check that you stopped payment on at the bank also endorse the insurance check we are holding as we feel like we will have fulfilled our contract as we cannot finish the truck while you are driving it.

"We held our shop open for the three days as per our agreement with you which caused us a loss by you not bringing in your truck as we refused to take in other work."

In the meantime, as will·be noted from this letter, the insurer sent plaintiff its check for $151.60, payable jointly to plaintiff and defendant. He refused to indorse the check and on April 6, 1936, this suit was instituted against the insurer and J. E. Puckett, the assured. Judgment is prayed for against both in solido for $151.-60 and against Puckett, individually, for $50.

Defendant's position is that he declined to return the truck for final repairs because he was afraid plaintiff would consume too much time to do so and, in addition, that he discovered from estimates of the Monroe garages it would cost $56 more to do these repairs than plaintiff estimated. In his answer he gives a list of the repairs necessary to put the truck in satisfactory condition. This list is based upon information given to him by one of the garages consulted in Monroe. He avers that plaintiff declined to agree to make these additional repairs.

There was judgment in favor of plaintiff against Puckett for $201.60, less $30, and he has appealed. Plaintiff's rights against the insurer were reserved to it.

When plaintiff's representative interviewed defendant in Ruston about September 3d, an agreement was reached between them as to the nature and extent of additional repairs necessary to put the truck in the condition contemplated by the agreement. These were listed at the time and correspond substantially to the list made by the Monroe garages. Plaintiff unequivocally agreed to do this additional work as part of its obligation under the original contract. If any additional charge should have been made for work or parts not included in the original estimate, such would have fallen upon the insurer and not upon defendant. Fifty dollars was the limit of his liability.

We do not think defendant's position in the case has any substantial basis to rest upon. In its letter to him of September 4th plaintiff met squarely the condition laid down by him in his letter

of the 3d. This letter of plaintiff was signed by Mr. Gatlin, as manager. It was this guarantee that defendant demanded as a condition precedent to returning the truck. He got the guarantee, but persisted in his refusal to return the truck.

The record does not disclose that the delay in securing the parts necessary to complete repairing the truck was chargeable to plaintiff. Certainly the work could not be completed without these parts. It is unreasonable to assume that unnecessary delay was incurred through plaintiff's fault, as the sooner the work was done the sooner it would receive its pay. In the beginning defendant does not appear to have been in haste about having the damaged truck restored to good condition, as the collition occurred on July 1st and the truck was placed in plaintiff's possession on July 23d.

The record discloses that the value of the labor necessary to complete the repairs of the truck is $30. As the work was not done, it was for this reason that the lower court deducted this amount from plaintiff's claim. It is also shown that the unused parts ordered especially for defendant's truck are not regularly kept in stock by repair garages and are rarely needed. The price of these parts was properly included in plaintiff's demand. Defendant has the right to their possession.

We think the judgment appealed from correct and it is hereby affirmed with costs.